## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DEVLIN MARSHMAN, | ) | Civil Action No. 2:25-cv-00130 |
|  | ) |  |
| *Plaintiff,* | ) | Filed Electronically |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| FLASHBROWN TRANSPORT, LLC; and | ) |  |
| MICHAEL BROWN, | ) |  |
|  | ) |  |
| *Defendants.* | ) |  |
|  | ) |  |

### COMPLAINT IN CIVIL ACTION

Plaintiff, Devlin Marshman, by and through the undersigned counsel, files the following Complaint in Civil Action against Defendants, Flashbrown Transport, LLC, and Michael Brown, averring as follows:

### PARTIES

1.    Plaintiff, Devlin Marshman, is an adult individual who resides in Braddock, Pennsylvania.

2.    Defendant, Flashbrown Transport, LLC ("Flashbrown"), is registered with the Pennsylvania DOS as a limited liability company formed in the Commonwealth of Pennsylvania, which maintains a registered office through "United States Corporation Agents, Inc." in Lehigh County at 1729 West Tilghman Street Rear, Allentown, Pennsylvania 18109.

3.    Upon information and belief, Flashbrown maintains its principal place of business in Allegheny County at 128 Ash Street, Apartment 8, California, Pennsylvania 15419.

4.    Upon information and belief, Flashbrown is a subcontracted carrier/freight forwarder in the business of transporting and installing home appliances.

5.      Defendant, Michael Brown ("Brown") (Flashbrown and Brown are collectively referred to as "Defendants"), is an adult individual resident of the Commonwealth of Pennsylvania believed to be residing in Washington County, California, Pennsylvania 15419.

6.      Upon information and belief, Brown is the sole owner and operator of Flashbrown.

7.      At all times relevant hereto, Brown personally committed, effectuated, and/or engaged in conduct more fully described below on behalf of Flashbrown.

8.      At all times relevant hereto, Flashbrown is an employer under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.* ("MWA"); and Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. ("WPCL").

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

9.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under the FLSA (the "Federal Law Claims").

10.     Plaintiff is also advancing violations pursuant to the MWA and WPCL (collectively, the "State Law Claims").

11.     This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

12.     Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under

2

Article III § 2 of the United States Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.    The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

13.    Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division, as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within Allegheny County, Pennsylvania, which is one of the counties encompassed in the Western District.

14.    This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to Local Civil Rule 3 (LCvR 3).

**C.    This Court May Exercise Personal Jurisdiction Over Defendants as They Have Consented to Personal Jurisdiction of Pennsylvania's Courts and the Exercise of Personal Jurisdiction Complies With the Due Process Clause.**

15.    This Court may exercise personal jurisdiction over Defendants as: (1) Defendants have subjected themselves to jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa. C.S. § 5301; and (2) this Court's exercise of general jurisdiction over Defendants is compliant with the Due Process Clause of the United States Constitution.

16.    A federal district court may exercise personal jurisdiction over the parties "to the extent provided under the law of the state in which the court sits". *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 , 96 (3d Cir. 2004)).  A federal court in Pennsylvania may exercise personal jurisdiction over the parties "to the extent Pennsylvania's long-arm statute

permits". *Nutt v. Best W. Int'l*, No. 3:16-CV-0002, 2016 BL 381653, at *3 (M.D. Pa. Nov. 16, 2016).

17.    Pennsylvania provides that personal jurisdiction over a defendant exists if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of personal jurisdiction pursuant to 42 Pa. C.S. § 5301.  *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 , 472 (1985) (citing that personal jurisdiction may be established by "express or implied consent") and *Bane v. Netlink, Inc.*, 925 F.2d 637 , 641 (3d Cir. 1991)).

18.    Specifically, 42 Pa. C.S. § 5301 states "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a).  This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

19.    Flashbrown is a limited liability company formed within the Commonwealth of Pennsylvania that continuously conducts business within Pennsylvania.  Correspondingly, Flashbrown is properly brought before this Court pursuant to 42 Pa C.S. § 5301(a).

20.    In addition, 42 Pa. C.S. § 5301(a)(1) provides for personal jurisdiction over individuals and provides:

> Persons. —
> (i) Presence in this Commonwealth at the time when process is served.

> (ii) Domicile in this Commonwealth at the time when process is served.

21.     Upon information and belief, Brown maintains a domicile within the Commonwealth of Pennsylvania at the time of effectuation of service.  Correspondingly, this Court may exercise personal jurisdiction over Brown.

## **FACTUAL BACKGROUND**

22.     On or around October 24, 2023, Plaintiff began his employment with Defendants as a Truck Driver and Installer, wherein his job duties included, but were not limited to, transporting appliances purchased from Costco to customers' homes and installing those appliances.

23.     At the outset of Plaintiff's employment, Brown and Plaintiff agreed that Plaintiff would be compensated at a salaried rate of $1,000.00 per week.  This was subsequently reduced to an alleged truck loan of $150.00 per pay period and thereby Plaintiff only received $850.00 per pay cycle (the "Truck").

24.     Flashbrown issued Plaintiff's compensation on a weekly basis via direct deposit.

**A.     Plaintiff Was Unlawfully Denied Overtime Wages Pursuant to the FLSA and MWA.**

25.     Plaintiff's typical workweek while employed by Flashbrown was from Tuesday to Saturday wherein client worked 14-hour shifts from 6:00 a.m. to 8:00 p.m.

26.     Therefore, Plaintiff routinely worked 70 hours per seven-day period and was entitled to an overtime rate of pay for no less than 30 hours per week.

27.     However, Defendants erroneously classified Plaintiff as an independent contractor who was exempt from the protections of the FLSA and MWA.

28.     In reality, Plaintiff was a non-exempt employee pursuant to the FLSA and MWA for purposes of his entitlement to minimum wage and overtime.

29.    Due to this misclassification, Plaintiff was not compensated for the routine and consistent overtime eligible wages he was entitled to.

30.    To date, Flashbrown refused to remit the minimum rate of pay for overtime hours on the basis of their misclassification of Plaintiff as an independent contractor (the "Overtime Wage Denial Practice").

**B.    Flashbrown and Brown Have Improperly Forced Plaintiff to Bear State and Federal Employment Taxes**

31.    In addition, due to Defendants' misclassification of Plaintiff as an independent contractor, Flashbrown issued a Form 1099 rather than a Form W-2, and consequently did not deduct taxes from Plaintiff's wages.

32.    As a result of the misclassification, Defendants have forced Plaintiff to pay employment taxes on his earnings despite the responsibility for state and federal taxes on wages resting with an employer.

33.    In doing so, Defendants have substantially deprived Plaintiff of less than $850.00 per week after the payment of taxes, but they have also improperly shifted expenses within the definition of the WPCL that employees are shielded from paying.

**C.    Defendants Deprived Plaintiff of his Final Wages.**

34.    On or around November 13, 2023, Plaintiff asked Brown to provide money to refuel the Truck, further advising that he did not have enough money to refuel the Truck for his next shift.

35.    Brown refused Plaintiff's request for gas money.

36.    Thereafter, Plaintiff notified Brown that he was resigning, effectively immediately, due to Brown and Flashbrown's unprofessional conduct, namely their practice of forcing Plaintiff

to bear the cost of work expenses essential to the successful completion of his job duties—expenses which should be an employer's responsibility.

37.     Plaintiff returned the Truck, keys, and gas card to Flashbrown on November 13, 2023, the date of his separation from employment.

38.     On or about November 17, 2023, Brown called Plaintiff to inform him that $850.00 would be deducted from Plaintiff's final paycheck for the workweek of November 7 to November 11, 2023, because Plaintiff resigned prior to his next scheduled shift on November 13, 2023.

39.     To date, Flashbrown has not compensated Plaintiff for hours worked during Plaintiff's final week of employment (the "Final Paycheck Withholding Practice").

**COUNT I**
**FAILURE TO REMIT WAGES**
**IN VIOLATION OF THE FLSA**
**29 U.S.C. § 201, *et seq.***

40.     Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

41.     Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.

42.     Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

43.     29 U.S.C. § 206 governs the minimum rate of pay and provides, in relevant part:

> (a) *Employees engaged in commerce. . .* Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
>
> > (1) except as otherwise provided in this section, not less than—

* * *

(C) $7.25 an hour, beginning 24 months after that 60th day[.]

(b) Every employer shall pay to each of his employees. . . who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this section by the amendments made to this chapter by the Fair Labor Standards Amendments of 1966, title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], or the Fair Labor Standards Amendments of 1974, wages at the following rate: [. . .] not less than the minimum wage rate in effect under subsection (a)(1).

29 U.S.C. § 206(a)-(b).

44.    29 U.S.C. § 207 governs the heightened rate of overtime pay and provides:

(a) *Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.*

(1)  Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, **for a workweek longer than forty hours** unless such employees receives compensation for his employment in excess of the hours above specified at a rate **not less than one and one-half times the regular rate at which he is employed**.

* * * *

29 U.S.C. § 207(a)(1) (bold emphasis added).

45.    The minimum pay mandates are incumbent upon "employers" who, through the course of their business practices, are "engaged in commerce."  29 U.S.C. §§ 203(d), (s)(1).

46.    29 U.S.C. § 203(d) delineates the definition of an employer as follows:

"Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

47.    The term "commerce" is specifically defined to include activities such as, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

48.    Further, 29 U.S.C. § 203 identifies when an organization engages in "commerce" sufficient to trigger the FLSA as:

> "Enterprise engagement in commerce or in the production of goods for commerce" means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1).

49.    In further elaboration of "commerce," the Third Circuit recognized in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982) that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to find the employer was an "enterprise engaged in commerce" pursuant to the FLSA.

50.    An "employee" is defined within 29 U.S.C. § 203(e)(1) which states in relevant part: "Except as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual employed by an employer."

51.    The definition of "employee" is also recognized as "exceedingly broad"as to properly effectuate of the remedial purposes of the FLSA. *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015) (citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

52.    29 U.S.C. § 203(g) is to be read in conjunction with 29 U.S.C. § 203(e)(1) and defines "employ" to mean "to suffer or permit to work." 29 U.S.C. § 203(g).

53.     To further aid in evaluating whether an individual constitutes an "employee" within the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors in reaching a determination as to the individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin,* 949 F.2d at 1293 (quoting *Donovan v. DialAmerica Mktg., Inc*., 757 F.2d 1376, 1382 (3d Cir. 1985)).

**A.    Defendants are "Employer(s)" Pursuant to 29 U.S.C. § 203.**

54.     First, Defendants extended a position-for-hire to Plaintiff with specified duties, start times, and pay rates.

55.     Defendants also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendants.

56.     At all times relevant hereto, Defendants exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

57.     At all times pertinent hereto, Defendants also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

58.     As a business entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendants "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

59.    As such, Defendants were "employers" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

60.    Second, Brown specifically exerted influence and control over the terms and conditions of Plaintiff's employment, including the compensation structure and hours Plaintiff was expected to work.

61.    Brown further possessed the ability to hire and fire employees of Flashbrown and to significantly affect and/or alter the terms and conditions of their employment, including Plaintiff.

62.    Moreover, Brown personally devised and implemented the Final Paycheck Withholding Practice, and Overtime Wage Denial Practice.

63.    Therefore, Brown exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship sufficient to satisfy 29 U.S.C. § 203(d).

64.    Given Brown's personal role in Flashbrown's unlawful workplace wage practices, delineated above, which he did while acting within the scope of his employment as owner and operator of Flashbrown, Brown is liable for the corresponding violations of the FLSA.

**B.    Defendants are "Engaged in Commerce" Pursuant to 29 U.S.C. § 206.**

65.    Flashbrown is a Pennsylvania business engaged in the distribution of goods within Pennsylvania and its surrounding states.

66.    Together and separately, Defendants distribute goods from Pennsylvania across state lines, including, but not limited to, Ohio and West Virginia.

67.    Upon information and belief, Defendants purchased materials, supplies, and equipment necessary and integral for their business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for their business

operations within the Commonwealth of Pennsylvania and/or some other state, including but not limited to, the Truck, which was leased by Flashbrown for use by its employees to effectuate the distribution process.

68.    Additionally, upon information and belief, as part of their routine business practice, Defendants transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services that traverse state lines, and through interstate mail via the United States Postal System.

69.    Upon information and belief, Flashbrown and/or Brown have an annual dollar volume of $500,000.00, given the nature, size, scope, industry, and frequency of services that they are believed to have effectuated throughout Pennsylvania.

70.    Therefore, Defendants regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

71.    Given Defendants' status as employers, Defendants were mandated to comply with the minimum wage, overtime rate of pay, and record keeping requirements of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 211.

**C.    Plaintiff was an "Employee" Within the Scope of 29 U.S.C. § 203.**

72.    The FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts.  29 U.S.C. § 203(e)(1).

73.    At all times relevant hereto, Plaintiff agreed to contribute his time and energy to complete meaningful workplace duties for the financial benefit of Defendants.

74.    Plaintiff agreed to complete these duties in exchange for financial remuneration and Plaintiff's completion of these duties was never met with objection from Defendants.

75.    Given Defendants' lack of objection to Plaintiff's completion of duties, Defendants "permitted" Plaintiff to work within the definition of "employ" pursuant to 29 U.S.C. § 203(g).

76.    Additionally, aided by the six factors enumerated within *Donovan*, delineated above, it becomes even more evident that Plaintiff was an "employee" within the purview of 29 U.S.C. § 203(e)(1).

77.    Defendants exerted significant control over the manner in which Plaintiff performed his workplace duties.

78.    Defendants delineated the methodologies involved in the completion of Plaintiff's duties, the rate of productivity and the speed at which Plaintiff was to complete his tasks, and designated the specific space in which Plaintiff was to perform his tasks.

79.    Plaintiff possessed no meaningful opportunity for profit nor any financial risk of loss depending on his skill given he was compensated at a determined hourly rate; all the compensation that Defendants disbursed to Plaintiff was derived from hours recorded by Defendants and their wage payment practices, and Plaintiff was dependent on these schemes of compensation for his pay.

80.    Plaintiff was provided the equipment and materials necessary for the completion of all workplace tasks; the completion of his workplace tasks did not require any talents unique to Plaintiff or that were uncommon outside a traditional retail environment.

81.    Plaintiff worked for Defendants from October of 2023 to November of 2023 in a capacity that regularly involved Plaintiff dedicating more than 40 hours per week to Defendants' operations.  Plaintiff's employment was not limited by a specific duration or term of employment.

82.     The workplace duties that Plaintiff completed were an integral component of Defendants' operations given the delivery and installation of appliances were necessary for Defendants' transportation and freight forwarding business.

83.     As the factors delineated above readily illustrate, the reality of the circumstances surrounding Plaintiff and Defendants' interactions plainly indicate that Plaintiff was an employee for Defendants within the scope of 29 U.S.C. § 203.

**D.     Plaintiff was Denied the Minimum Overtime Rate of Pay Pursuant to 29 U.S.C. § 207.**

84.     That is, at all times relevant hereto, Defendants were mandated to pay Plaintiff one hundred fifty percent of his corresponding base rate of pay for any time worked beyond 40 hours in a seven-day period.  29 U.S.C. § 207(a)(1).

85.     As set forth above, Plaintiff regularly worked in excess of 40 hours per week.

86.     At the time of Plaintiff's separation from Defendants, a term of his employment was that he would be paid $1,000.00 per week for 40 hours of work, which equates to $25.00 per hour for the first 40 hours.

87.     Plaintiff engaged in hours of work that Defendants were legally obligated to compensate him at the overtime rate of pay of $37.50 per hour, which they did not.

88.     Therefore, Defendants failed to remit wages in the amount of one hundred and fifty percent of the base rate of pay.

89.     Defendants violated 29 U.S.C. § 207 in failing to pay Plaintiff overtime wages based on the $1,000.00 per week / $25.00 per hour rate of pay.

**E.     Plaintiff is Entitled to Actual and Liquidated Damages, Attorneys' Fees, and Costs.**

90.     29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorneys' fees.

91.     An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942)).

92.     Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945)).

93.     Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

94.     Defendants' willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

95.     Defendants are unable to meet their burden of establishing "good faith and reasonable grounds" for their violation of Plaintiff's rights. This is demonstrated by Defendants' willful animus in flagrantly disregarding their responsibilities and obligations as an employer.

96.     Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

97.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages.

98.     WHEREFORE, Plaintiff, Devlin Mar seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT II
### FAILURE TO REMIT WAGES
### IN VIOLATION OF THE MWA
### 43 P.S. § 333.101, *et seq.*

99.     Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

100.    The MWA, much like its federal law counterpart in the FLSA, mandates a heightened rate of pay for any hour worked in excess of 40 hours per workweek.  *See* 43 P.S. § 333.104.

101.    Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary. . . ."  43 P.S. § 333.104(c).

**A.    Defendants are "Employer(s)" Under the MWA.**

102.    The MWA defines "employer" to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe."  43 P.S. § 333.103(g).

103.    In that the MWA's definition of "employer" is nearly identical to the FLSA, the analysis is the same under the MWA as under the FLSA.  *See Schneider v. IT Factor Prods.*, CIVIL ACTION NO. 13-5970, 2013 U.S. Dist. LEXIS 173583, at *13 (E.D. Pa. Dec. 10, 2013) (citing *Scholly v. JMK Plastering, Inc.*, No. CIVIL ACTION NO. 07-cv-4998, 2008 U.S. Dist. LEXIS 49958, at *6-7 (E.D. Pa. June 25, 2008)).

104.    As previously averred, and for the same reasons Defendants are employers for purposes of the FLSA, Defendants are also employers for purposes of the MWA.

105.    Defendants routinely and regularly conduct business in the Commonwealth of Pennsylvania and routinely and regularly solicit business in Pennsylvania through their e-commerce business.

106.    Defendants employ individuals in the Commonwealth of Pennsylvania for commercial purposes and the financial benefit of Defendants.

**B.    Plaintiff was an "Employee" Under the MWA.**

107.    The MWA defines "employe[e]" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

108.    In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

109.    In determining whether an individual is an employee within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. 2003).

110.    Because Plaintiff is an employee for purposes of the FLSA, Plaintiff is also an employee for purposes of the MWA.

**C.    Defendants are Liable for Violations of the MWA.**

111.    Consequently, given Defendants' status as employers and Plaintiff's status as an employee, Defendants were obligated to comply with the overtime wage requirements of the MWA.

112.    Defendants failed to pay Plaintiff the full amount of wages owed for the overtime hours that he worked in violation of 43 P.S. § 333.104(c).

113.    In addition, the MWA provides for the recovery of attorneys' fees and costs when an employer fails to pay an employee in accordance with 43 P.S. § 333.104(c).

114.    Defendants are liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 43 P.S. § 333.113.

115.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages.

116.    WHEREFORE, Plaintiff, Devlin Marshman, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**FAILURE TO REMIT WAGES**
**IN VIOLATION OF THE WPCL**
**43 P.S. § 260.1 *et seq*.**

117.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

118.    The WPCL provides the employee with a statutory remedy to enforce his rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee.  *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

119.    The contract between the employer and the employee governs the determination of the specific wages earned by the employee.  *Id.* (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986)).

120.    This statutory remedy created by the WPCL creates both a private cause of action to any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

121.    To recover under the WPCL, a plaintiff must demonstrate: (1) a contractual entitlement; (2) to compensation from wages; and (3) a failure to pay that compensation."  *Carlson v. Qualtek Wireless LLC*, No. 22-125, 2022 BL 277728, at *14 (E.D. Pa. Aug. 10, 2022).

122.    Further, an employee must establish "an implied oral contract between the

employee and the employer". *Id.*

123.    The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

124.    The WPCL's inclusion of "agent or officer" within the definition of "employer" means that a corporate officer may be personally liable for the corporation's failure to pay wages. *Faden v. DeVitry*, 625 A.2d 1236 (Pa. Super. 1993), *appeal denied,* 634 A.2d 221 (Pa. 1993); *Tener v. Hoag*, 697 F.Supp. 196 (W.D. Pa. 1988).

125.    Flashbrown is a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is also an employer under 43 P.S. § 260.2a.

126.    Further, Brown employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, he is an employer under 43 P.S. § 260.2a.

127.    As averred in this Complaint, Defendants and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an employee.  This factual reality remains true for the purposes of the WPCL as well.

128.    The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements."  43 P.S. § 260.2a.

129.    Defendants have not asserted a good-faith dispute over the wages due and owing to Plaintiff and have not provided written notice of conceded or disputed wages associated with Plaintiff pursuant to 43 P.S. § 260.6.

130.    Therefore, all unpaid wages are presently due and owing to Plaintiff.

**A.    Plaintiff's Employment With Defendants is Contractual: Plaintiff Provided Services to Defendants in Exchange for a Weekly Rate of Pay.**

131.    On or about October 24, 2023, Plaintiff entered into a verbal contract for employment with Defendants, wherein Plaintiff would provide services in exchange for a weekly compensation of $1,000.00.

**B.    Plaintiff Has Accrued Owed Compensation From Defendants in the Form of Wages.**

132.    Plaintiff has sufficiently accrued wages within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Defendants in exchange for compensation in the form of a weekly rate commensurate with the time Plaintiff expended in performance of said duties.

**C.    Defendants Have Failed to Remit Plaintiff His Owed and Accrued Wages.**

133.    The WPCL imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer.  43 P.S. § 260.3(a).

134.    Defendants' Established Payday Procedure was the disbursement of employee pay on a weekly basis.

135.    As delineated above, Defendants effectuated the Final Paycheck Deduction Practice to punish Plaintiff for severing the employment relationship.

136.    Moreover, Defendants effectuated the Final Paycheck Withholding Practice and have not compensated Plaintiff for hours worked during his final week of work.

137.    Further, Plaintiff never received overtime pay for hours worked above and beyond 40 in a seven-day period, which created a disparity in owed wages throughout the entirety of his employment with Defendants.

138.    Following the final occurrence of Defendants' Established Payday Procedure after

Plaintiff's separation, Plaintiff was entitled to the balance of the accrued disparity between his contracted rate and the rate which he was actually paid.

139.    However, Defendants have failed to compensate the remaining and outstanding wages.

**D.    An Award of Liquidated Damages is Appropriate Given Defendants' Failure to Provide Plaintiff With His Outstanding Wages.**

140.    Section 260.9a(b), in conjunction with Section 260.10 of the WPCL permits an employee to institute an action for wages and, further liquidated damages, that are not paid in accordance with the Established Payday Procedure.  These statutory provisions state as follows:

> Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated.  Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.  43 P.S. §260.9a(b).

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.  43 P.S. § 260.10.

141.    Per the above statutory provisions, Defendants were legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for thirty days (30) beyond Defendants' Established Payday Procedure.

142.    By omission, Defendants refused to pay Plaintiff all wages due and owing to him beyond 30 days of the date of the Established Payday Procedure.

143.    To date, Defendants have not paid Plaintiff the above-mentioned wages that are due and owing to Plaintiff as of the last Established Payday Procedure.

144.    As such, Defendants have violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

145.    Additionally, Defendants have not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

146.    Defendants' actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

147.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

**E.    Plaintiff is Entitled to Reasonable Attorneys' Fees and Costs Incurred in Pursuit of His Unpaid Wages.**

148.    In addition, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant.

43 P.S. § 260.9a(f).

149.    As such, Plaintiff is also entitled to reasonable attorneys' fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendants' conduct described hereinabove.

150.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed

wages.

151.    WHEREFORE, Plaintiff, Devlin Marshman, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT V**
**UNJUST ENRICHMENT**
**UNDER PENNSYLVANIA COMMON LAW**

152.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

153.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995)).

154.    A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value.  *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995)).

**A.    Plaintiff Conferred a Benefit Upon Defendants by Performing His Workplace Duties and Defendants Appreciated the Benefit Plaintiff Conferred.**

155.    Plaintiff conferred a benefit to Defendants by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Defendants' enterprise.

156.    Indeed, Plaintiff's performance of work hours for which he never compensation, as detailed and described above, constitutes a benefit that was directly conferred to Defendants.

**B.      Defendants Accepted the Benefits Plaintiff Conferred and it is Inequitable for Defendants to Retain Those Benefits Without Compensating Plaintiff.**

157.    Defendants retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

158.    By accepting Plaintiff's labor and services, and not paying Plaintiff for his final week of work and never paying him the minimum overtime rate of pay for hours worked above and beyond 40 in a seven-day period, Defendants have been unduly enriched.

159.    As a matter of justice, it would be manifestly unjust and inequitable for Defendants to retain the benefit of that labor and services without paying Plaintiff due compensation.

160.    Defendants' actions described hereinabove were the direct and proximate cause of Defendants' unjust enrichment and the damages they owe Plaintiff for retaining a benefit without paying for its value.

161.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages, and he is entitled to recoup the amount of the benefit he conferred upon Defendants and which Defendants unjustly retained.

162.    WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## <u>JURY DEMAND</u>

163.    Plaintiff demands a trial by jury on all matters so triable.

## *AD DAMNUM* CLAUSE AND PRAYER FOR RELIEF

164.    Plaintiff, Devlin Marshman, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendants, Flashbrown Transport, LLC, and Michael Brown, and prays for relief as follows:

(a)    Declare and find that Defendants committed one or more of the following acts:

   (i)    Violated provisions of the FLSA and/or the MWA by failing to pay minimum and/or overtime wage(s) to Plaintiff;

   (ii)    Violated provisions of the WPCL by failing to pay owed wages to Plaintiff in accordance with the Established Payday Procedure; and

   (iii)    Were unjustly enriched at Plaintiff's expense;

(b)    Award consequential damages resultant from Defendants' unjust enrichment of the employment agreement;

(c)    Award unpaid overtime wages and other compensation denied to Plaintiff to date by reason of Defendants' unlawful acts;

(d)    Award liquidated damages on all compensation for overtime hours worked due and accruing from the date such amounts were due pursuant to the FLSA, MWA, and/or WPCL;

(e)    Award reasonable attorneys' fees and costs of suit incurred prosecuting these claims;

(f)    Award pre-judgment and continuing interest as calculated by the Court;

(g)    Award injunctive and other equitable relief as provided by law; and

(h)     Award such other and further relief as this Court deems just, equitable, and

proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  January 29, 2025                     By: */s/ Kyle H. Steenland*
                                            Kyle H. Steenland (Pa. I.D. No. 327786)
                                            Cynthia A. Howell (Pa. I.D. No. 325662)

                                            The Workers' Rights Law Group, LLP
                                            Foster Plaza 10
                                            680 Andersen Drive, Suite 230
                                            Pittsburgh, PA 15220
                                            Telephone: 412.910.9592
                                            Facsimile: 412.910.7510
                                            kyle@workersrightslawgroup.com
                                            cynthia@workersrightslawgroup.com

                                            *Counsel for Plaintiff, Devlin Marshman*

## **VERIFICATION**

I, Devlin Marshman, hereby certify that the statements in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.  This verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false statements, I may be subject to criminal penalties.

01 / 29 / 2025
_____
Date

_____
Devlin Marshman